SMITH, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*November 10—November 27, 1908.*

*Railroads: Personal injuries: Accidents at crossings: Contributory negligence.*

In an action for personal injuries sustained at a railroad crossing, it is *held*, under the evidence, that the plaintiff had an opportunity to look and listen while traveling over the fifty-three feet which intervened between the point where he stopped, looked, and listened and the nearest rail of the track, and that, although his attention was diverted by the spirited team he was driving, it was not irresistibly diverted, and hence that he was guilty of contributory negligence. WINSLOW, C. J., and SIEBECKER, J., dissent.

APPEAL from a judgment of the circuit court for Waukesha county: MARTIN L. LUECK, Circuit Judge. *Reversed.*

For the appellant there was a brief by *C. H. Van Alstine* and *H. J. Killilea,* and oral argument by *Mr. Van Alstine.*

Among other references upon the part of the appellant

were the following: *Hain v. C., M. & St. P. R. Co.* 135 Wis. 303, 116 N. W. 20; *Goldmann v. Milwaukee E. R. & L. Co.* 123 Wis. 168, 101 N. W. 384; *Schroeder v. Wis. Cent. R. Co.* 117 Wis. 33, 93 N. W. 837; *Guhl v. Whitcomb,* 109 Wis. 69, 85 N. W. 142; *Koester v. C. & N. W. R. Co.* 106 Wis. 460, 82 N. W. 295; *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 378, 75 N. W. 169.

For the respondent there was a brief by *Tullar & Lockney,* and oral argument by *D. S. Tullar.*

Among other references upon the part of the respondent were the following: *Piper v. C., M. & St. P. R. Co.* 77 Wis. 247, 46 N. W. 165; sec. 1809, Stats. (1898); *Roedler v. C., M. & St. P. R. Co.* 129 Wis. 270, 109 N. W. 88; *Gower v. C., M. & St. P. R. Co.* 45 Wis. 182; *Tiborsky v. C., M. & St. P. R. Co.* 124 Wis. 243, 102 N. W. 549; *Holmes v. Fond du Lac,* 42 Wis. 282; *Beggs v. C., W. & M. R. Co.* 75 Wis. 444, 44 N. W. 633; *Ward v. C., St. P., M. & O. R. Co.* 85 Wis. 601, 55 N. W. 771; *Clifford v. M., St. P. & S. S. M. R. Co.* 105 Wis. 618, 81 N. W. 143; *Valin v. M. & N. R. Co.* 82 Wis. 1, 51 N. W. 1084.

TIMLIN, J. The respondent brought this action to recover damages for personal injuries suffered at the crossing of a highway by defendant's railroad, and the following facts appear without dispute: On the 17th day of May, 1906, in the forenoon, respondent, while going home from Menominee Falls, was injured at Haylet's Crossing by means of a collision between his team and appellant's locomotive. At Haylet's Crossing appellant's railroad ran in a northeasterly and southwesterly direction and the highway ran in an easterly and westerly direction. Seven hundred and fifty feet along the railroad track northeast of Haylet's Crossing there was another highway crossing called Zink's Crossing. The highway at Zink's Crossing ran in a northerly and southerly direction and turned west at Haylet's Corner and continued

west to and beyond Haylet's Crossing. In the highway east of Haylet's Crossing and west of Haylet's Corner there was a bridge over a small stream. From the center of this bridge to the center of the railroad track was seventy-seven feet. The highway at the bridge was somewhat higher than the railroad track. The day was bright but windy. The wind was in the southwest and dust was flying. The traveled track of the highway between the bridge and the railway crossing was about sixteen feet in width and a little down hill, and on each side of this traveled track the land was low and marshy. Any one traveling at that time from Haylet's Corner to Haylet's Crossing had for the entire distance an unobstructed view along the railroad track to Zink's Crossing 750 feet and some distance beyond. Respondent was driving a team of highlifed horses hitched to a light wagon. His wife and child were with him on the same seat and he was sitting on the right-hand side. He passed Zink's Crossing, turned west at Haylet's Corner, and proceeded to the bridge. After reaching the bridge he stopped his horses when the hind wheel of the wagon was about in the center of the bridge. He was then sitting in the wagon about eight feet west of the center of the bridge, and the horses' heads were about ten or twelve feet west of him. The distance from the center of the bridge to the center of the railroad track being seventy-seven feet and the width of the track four feet eight inches, the heads of respondent's horses were about fifty-three feet eight inches from the east rail of the track when respondent started his team from the bridge. He knew the train was due, and he looked both ways and listened for the train before he started from the bridge, but he did not look or listen again until his horses were actually upon the track. He gave all his attention to his team, which was going at the rate of three miles per hour and was dancing. When he stopped on the bridge he looked both ways along the track and listened for an approaching train, but neither saw nor

heard any, and then started on toward the track, his team going on a good fast walk down the hill and dancing, and after leaving the bridge and until he got to the railroad his attention was directed to the team because they wanted to go.

There is evidence to support a finding that no bell was rung or whistle sounded by the train approaching from the northeast. Just as the horses were about stepping over the first rail plaintiff heard a rattle that sounded like the cars. He looked up and the train was close on him, and he tried to back off the track and shouted to let the engine men know he was there, and at this moment the locomotive struck the horses near the fore part of their bodies, carried them down the track, and threw part of the wagon and the plaintiff against the side of the locomotive, injuring him severely.

It is conceded that there was evidence to support the verdict finding the defendant negligent, and only two questions are raised upon this appeal; the first being whether or not upon the facts above set forth the plaintiff was guilty as matter of law of contributory negligence so that a nonsuit should have been granted or a verdict directed for the defendant; and, second, whether the court erred in refusing to instruct the jury as requested by the defendant.

We are unable to discover any substantial ground of difference helpful to the respondent between this case and the case of *Marshall v. G. B. & W. R. Co.* 125 Wis. 96, 103 N. W. 249, and *Hain v. C., M. & St. P. R. Co.* 135 Wis. 303, 116 N. W. 20. In each of the three cases the railway crossed the highway at an acute angle, the person injured was driving a team toward the crossing, and failed to continue to look and listen up to the time the horses stepped upon the track, having looked and listened some distance back—forty or fifty feet in the *Marshall Case,* four or five rods, that is, sixty-six or eighty-two and one-half feet, in the *Hain Case,* and fifty-three feet in the instant case. The writer and Mr. Justice SIEBECKER dissented in the *Hain*

*Case* because we thought that within the rule of *Guhl v. Whitcomb,* 109 Wis. 69, 85 N. W. 142, the attention of the plaintiff was irresistibly diverted from the approaching train by the danger signals from the freight train on the passing track headed for the crossing. (See diagram.) When Mrs. Hain was forty feet from the rail and her horses' heads fifteen feet nearer to the rail, the engineer of the freight on the passing track gave a danger signal by two short blasts of the steam whistle, which caused Mrs. Hain to look in his direction and away from the approaching train, whereupon she doubled up the ends of the reins, struck the horses with them once, and then looked west between ten and fourteen feet from the track, but continued to attempt to cross. With one engine headed toward her and giving the danger signal to her right and partly behind her, and another coming from her left and bearing down upon the same crossing under the circumstances there shown, the court said:

"The duty to look and listen is absolute when the opportunity exists; that duty is not excused by mere diversion of attention, as it may be in highway cases, but there must be circumstances for which the traveler is not responsible which so irresistibly force his attention to something else as to deprive him of the opportunity to perform the duty."

Respondent's counsel contends that in the case at bar the attention of the plaintiff was irresistibly diverted from his duty to continue to look and listen after he started up his team and until he reached the track by the fact that his horses were high spirited and, although going on a walk, were prancing, and that plaintiff was driving along a raised causeway fifteen or sixteen feet wide and four feet high, on either side of which was marsh. By comparing this with the facts in the *Hain Case, supra,* it will be seen how insufficient it is to make out a case of irresistible diversion from the duty of continuing to look and listen until he reached the track. This reference to the *Hain Case* is to show by comparison

how weak the instant case is in this respect compared with the *Hain Case*. The instant case is ruled by the cases hereinafter cited. Counsel relies somewhat on *Piper v. C., M. & St. P. R. Co.* 77 Wis. 247, 46 N. W. 165, and upon a discussion of that case found in *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 378, 75 N. W. 169, but the effect of these cases upon the situation must be determined by the later case of *Guhl v. Whitcomb,* 109 Wis. 69, 85 N. W. 142. Other cases in this court are: *Goldmann v. Milwaukee E. R. & L. Co.* 123 Wis. 168, 101 N. W. 384; *Schroeder v. Wis. Cent. R. Co.* 117 Wis. 33, 93 N. W. 837; *Koester v. C. & N. W. R. Co.* 106 Wis. 460, 82 N. W. 295; *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 378, 75 N. W. 169.

We do not see how it can be correctly said that the plaintiff had no opportunity to look and listen while traveling over the fifty-three feet of space which intervened between the point where he stopped, looked, and listened, and the nearest rail of the track, and, although his attention was diverted, we cannot say that it was irresistibly diverted. We cannot bend the law to the equities and exigencies of particular cases. Without certainty of rule and uniformity of decision rights and liabilities would rest in judicial discretion rather than in rules of law. If these rules relative to the degree of care required of one approaching a railway crossing are to be changed, it is not for this court, in view of the long line of precedents here established, to make that change. This makes it unnecessary to consider the exceptions to the charge.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to dismiss the complaint.

WINSLOW, C. J. (*dissenting*). I am unable to agree with the conclusion reached by the court in this case. The evidence is undisputed that the plaintiff stopped his team at the last favorable place to stop, when his horses were fifty-three

feet from the rail, and looked and listened for the approach of a train and saw and heard none. Up to this point he certainly exercised ordinary care. He then started his team toward the track down a slope on a narrow grade about four feet in height. He testified that the horses, though gentle, were high spirited and were dancing, and *he had* to keep close watch of them; that his attention was directed to the team because they wanted to go sometimes faster than he wanted, and he did not want to go rattlety bang over the track and throw the pigrack out of the wagon.

It is true that this court has laid down the rule that a traveler approaching a railroad track must look and listen at the last opportunity, and to this rule there is only the exception that where the traveler's attention is irresistibly forced to something else he may be excused. *Guhl v. Whitcomb,* 109 Wis. 69, 85 N. W. 142; *Hain v. C., M. & St. P. R. Co.* 135 Wis. 303, 116 N. W. 20. It seems clear to me that the words "irresistibly forced," as here used, cannot have their literal meaning of actual physical compulsion, because the conduct of his team, though they be not beyond control, may be such as to "force" him to give them his exclusive attention, as this court has held. *Piper v. C., M. & St. P. R. Co.* 77 Wis. 247, 46 N. W. 165, as explained in *Schneider v. C., M. & St. P. R. Co.* 99 Wis. 378, 75 N. W. 169. The words must therefore have a construction not strictly literal, and it seems to me they cover a case where a reasonably prudent man, after looking and listening at the last favorable point and in close proximity to the track, starts to cross, and the conduct of his team is such that he feels that duty imperatively requires him to give them his sole attention. I think it was a question for the jury to determine whether such was the situation here, and therefore I dissent.

Siebecker, J. I concur in the foregoing opinion of Winslow, C. J.