GRIMM, Appellant, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Respondent.

*January 26—February 16, 1909.*

*Street railways: Collision with vehicle: Contributory negligence: Court and jury: Duty of person about to cross tracks.*

1. In an action for injuries sustained in a collision with a street car there was evidence tending to show that as plaintiff got into his inclosed laundry sleigh, which was fronting north on the west side of a street, he saw the car approaching from the north and at least 900 feet away and saw several people standing on the corner of an intervening street apparently intending to take the car; that he immediately started to turn around, but did not look again at the car; that after partially making the turn his back was toward the car and his vision otherwise obstructed; that in making the turn the fore feet of the horse

went just beyond the east rail of the south-bound track; that the time which would be consumed in making the turn and clearing the track would not exceed half a minute; that the sleigh had almost cleared the track when it was struck; that the car was running at an excessive rate of speed; and that the motorman failed to use reasonable precaution to prevent the collision. *Held*, that it was a question for the jury whether plaintiff was negligent.

2. Unless there is enough in the testimony to enable a court to say, as a matter of law, that the plaintiff was guilty of contributory negligence, a nonsuit should not be granted on that ground.

3. Contributory negligence is a defense that must ordinarily be shown by affirmative evidence or by logical inference from such evidence, and is not established by a mere absence of proof.

4. A person about to cross the track of a street railway must, as in the case of a steam railroad, look and listen for approaching cars; but there is a distinction between the two cases, in that the person wishing to cross the street railway track in advance of an approaching car has the right of way and may proceed without being guilty of contributory negligence if, calculating reasonably from the standpoint of a person of ordinary care and intelligence so circumstanced, he has sufficient time, proceeding reasonably, to clear the track without interfering with the movement of the car, assuming that it is moving at a reasonable and lawful rate of speed—provided, however, that if, in the exercise of ordinary care, the person about to cross can see that the car is approaching at an unlawful or unusual speed, he must take that fact into consideration in deciding whether there is time for him to safely clear the track.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Reversed.*

This action is brought to recover damages for injury to person and to property. The plaintiff was the owner of a laundry sleigh and horse, and at about 5:30 o'clock p. m. of February 8, 1907, delivered laundry to a building located on the west side of Third street and about midway between Locust street on the north and Hadley street on the south. Third street is one of the principal business streets of the city of Milwaukee, and a double track street car line is operated thereon. While making the delivery the plaintiff's horse

faced north and stood adjacent to the curbing on the west side
of the street.   After the laundry was delivered the plaintiff
picked up the weight to which a line had been attached for
the purpose of holding the horse, placed the weight in the
sleigh, and stepped into the seat.   While doing so, and before
starting the horse, he looked to the north and observed a south-
bound street car approaching him, which, according to his
calculation, was about 900 feet distant at the time.   He im-
mediately started to turn his horse around so as to proceed
homeward.   In making the turn it appeared that the front
feet of the horse extended a little beyond the east rail of the
south-bound track.   The runners of the sleigh were carried
over one, if not both, of the rails of the same track.   Before
the turn was completed, so that the sleigh would clear the
passing car, the collision occurred which resulted in the in-
jury and damage complained of.

The sleigh was completely inclosed, having a vestibule in
the front and a glass door in the rear.   It also appears that
there was a glass in the front of the vestibule, but whether or
not it extended to the sides thereof does not appear from the
testimony.   The plaintiff testified that it would require less
time than half a minute to make the turn.   He also testified
that, when he looked north and saw the car approaching, he
also saw some people at the southwest corner of Third and
Locust streets, apparently waiting to take the approaching
car.   The car did not stop there, however, and there is testi-
mony tending to show that no warning was given immediately
before the collision and that the motorman did not make any
attempt to lessen the speed of the car until it was too late to
avoid the collision; furthermore, that there was nothing to
obstruct the motorman's view of the plaintiff's vehicle.
There was also some testimony tending to show that the car
in question was proceeding at about twice the ordinary rate
of speed.

At the close of the plaintiff's evidence the court granted a
nonsuit, on the ground that the plaintiff should have looked

again in the direction of the approaching car, before entering upon the tracks, to ascertain whether it was safe to attempt to make the turn. Judgment was entered dismissing the complaint, from which judgment this appeal is taken. The error assigned is the ruling of the court in granting a nonsuit.

For the appellant there was a brief by *Houghton & Neelen,* and oral argument by *F. W. Houghton.* They cited Joyce, Electric Law, §§ 570, 572, 594; *McCormack v. Nassau E. R. Co.* 18 App. Div. 333, 46 N. Y. Supp. 230; *Indianapolis St. R. Co. v. Marschke,* 166 Ind. 490, 77 N. E. 945; *Indianapolis St. R. Co. v. Bolin,* 39 Ind. App. 169, 78 N. E. 210; *Williamson v. Old Colony St. R. Co.* 191 Mass. 144, 77 N. E. 655; *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593, 608; *Hanlon v. Milwaukee E. R. & L. Co.* 118 Wis. 210, 215, 217.

*Clarke M. Rosecrantz,* for the respondent, contended, *inter alia,* that the trial court's construction of ambiguous testimony will rarely be disturbed. *Kamp v. Coxe Bros. & Co.* 122 Wis. 206, 210. The law condemns the plaintiff's conduct as negligent. *Dummer v. Milwaukee E. R. & L. Co.* 108 Wis. 589; *Guhl v. Whitcomb,* 109 Wis. 69, 75; *Goldmann v. Milwaukee E. R. & L. Co.* 123 Wis. 168. The following cases declare that when, "as established by the result," a traveler enters upon a track at a time when a car is in plain sight, and its location and speed such as to make some diminution of the speed of the car necessary in order to insure the traveler's safety, he accepts the consequences of attempting to make the crossing, and voluntarily assumes the risk: *Flynn v. Eastern R. Co.* 83 Wis. 238, 245; *Hogan v. Winnebago T. Co.* 121 Wis. 123; *Watermolen v. Fox River E. R. & P. Co.* 110 Wis. 153, 155, 156; *Marshall v. G. B. & W. R. Co.* 125 Wis. 96; *Clemons v. C., St. P., M. & O. R. Co.* 137 Wis. 387.

BARNES, J. The evidence fails to disclose the width of the street or the distance between the curb and the south-bound

track. It is in many respects unsatisfactory, apparently because the witnesses were unable to express themselves understandingly. There is evidence from which the jury might have found that when the plaintiff took his seat in the sleigh and lifted in the weight to which the horse had been hitched, he looked north and saw a car approaching him and about 900 feet distant, with an intervening street, upon the corner of which several people were standing, apparently for the purpose of taking the car; that plaintiff immediately started to turn around, but did not look again; that after partially making the turn his back would be toward the approaching car and his vision otherwise obstructed; that in making the turn the front feet of the horse extended just beyond the east rail of the south-bound track; that the length of time that would be consumed in making the turn and clearing the track would not exceed half a minute and might be somewhat less; that the car was running at an excessive rate of speed; and that the motorman failed to use reasonable precaution to prevent the collision. There was also some testimony in the case which tended to show that the car was somewhat further away from the plaintiff than he thought it was when he looked.

The question is, Do the facts stated present so clear a case of want of ordinary care on the part of the plaintiff as to warrant a trial court in saying that there was no question for the jury to pass upon in that regard? There is no evidence in the case tending to show that plaintiff was mistaken in estimating that the car was at least 900 feet away from him when he looked. His statement of the time it would take him to turn around so as to clear the track is an estimate, but does not appear to be an unreasonable one. If he only proceeded at the rate of two miles an hour he would travel eighty-eight feet in half a minute. It would seem that this was a greater distance than it was necessary for him to traverse in order to turn his vehicle and clear the track. Here again we find great uncertainty in the testimony as to the distance his horse

in fact did travel, or the speed at which it traveled, before the collision. The speed of the approaching car would have to slightly exceed twenty miles per hour in order to travel 900 feet in one half minute. There is also a lack of testimony as to the usual and customary speed of cars in the outskirts of the city, and plaintiff does not give us the benefit of any knowledge or experience he may have had upon the subject. The lack of evidence on certain points enumerated, however, does not materially assist the contention of respondent. Unless there is enough in the testimony to enable a court to say, as a matter of law, that the plaintiff was guilty of contributory negligence, the nonsuit should not have been granted on that ground.

If plaintiff did not exercise ordinary care, it must be, as far as the testimony now before us discloses, because he failed to look again at the approaching car before driving his horse upon the tracks, or because he attempted to make the turn after observing that the car was but 900 feet from him. There is nothing to show, directly at least, that he drove unnecessarily slow or that he continued to drive along the track a greater distance than was necessary. The testimony of the witness Kraschinsky is somewhat confusing upon the latter point; too much so, we think, to draw any reasonable inference therefrom.

This court has many times defined the duty of a traveler to look and listen in approaching a railway track. Two such cases have been decided during the present term (*Clemons v. C., St. P., M. & O. R. Co.* 137 Wis. 387, 119 N. W. 102, and *Smith v. C., M. & St. P. R. Co.* 137 Wis. 97, 118 N. W. 638), and the decisions of the court upon this point are numerous; so numerous that the law thereon should be considered settled in so far as this court can settle it. But the rule is to be applied with reason. Manifestly the plaintiff could make no accurate estimate of the speed of the approaching car considering the time of day and where he was

with reference to it.   In the very short space of time it took
him to swing his horse from the curbing to the car tracks the
position of the car would, in all probability, no more indicate
peril than did its position when he did look.   If he had
been mistaken as to the place the car was when he saw it,
and it was in fact much nearer than he supposed, the peril
might be avoided by a second look before driving his horse
upon the track, but it does not appear that he was mistaken.
If he was bound, under the peculiar circumstances of this
case, to take a second look, it was because he was negligent
in the first instance in concluding to attempt to turn around.

A person approaching the track of a steam railroad is bound
to look for approaching trains, and must use his sense of sight
at the last moment of opportunity before passing the line be-
tween safety and peril, and mere diversion of attention is not
a sufficient excuse for failure so to do.   He is not at liberty to
calculate how long it will take an approaching train to reach
the crossing if running at a lawful and usual rate of speed.
He must anticipate that it may be running at an excessive
speed and may reach the crossing before he can safely pass it.
*Clemons v. C., St. P., M. & O. R. Co., supra; Guhl v. Whit-
comb,* 109 Wis. 69, 85 N. W. 142; *Schroeder v. Wis. Cent.
R. Co.* 117 Wis. 33, 93 N. W. 837; *Koester v. C. & N. W. R.
Co.* 106 Wis. 460, 82 N. W. 295; *Schneider v. C., M. & St.
P. R. Co.* 99 Wis. 378, 75 N. W. 169; *Hain v. C., M. & St.
P. R. Co.* 135 Wis. 303, 116 N. W. 20; *Marshall v. G. B. &
W. R. Co.* 125 Wis. 96, 103 N. W. 249.

The obligation to use the senses of sight and of hearing be-
fore proceeding to cross the tracks of a street railway com-
pany is no less mandatory than in the case of crossing the
tracks of a steam road.   *Goldmann v. Milwaukee E. R. & L.
Co.* 123 Wis. 168, 170, 101 N. W. 384; *Dummer v. Milwau-
kee E. R. & L. Co.* 108 Wis. 589, 84 N. W. 853; *Tesch v.
Milwaukee E. R. & L. Co.* 108 Wis. 593, 84 N. W. 823;
*Watermolen v. Fox River E. R. & P. Co.* 110 Wis. 153, 85
N. W. 663.

In the absence of any showing as to the distance the plaintiff's horse traveled, or the length of time it traveled after the plaintiff looked at the approaching car and before it passed the danger line, the court can hardly assume that the failure to look a second time was negligence. The time may have been so short that the distance traveled by the car would have been a negligible factor in determining whether or not the turn might be made with safety. Contributory negligence is a defense that must ordinarily be shown by affirmative evidence or by logical inference from such evidence, and is not established by a mere absence of proof. *Haetsch v. C. & N. W. R. Co.* 87 Wis. 304, 58 N. W. 393.

Under the authorities cited and many others that might be cited, if the plaintiff had driven on the tracks of a steam railroad under the circumstances that he entered upon the tracks of the street railway company here, the court might well say, as a matter of law, that he was guilty of contributory negligence. And this leads us to a consideration of the question whether any distinction should be drawn between the two classes of roads, particularly where one is operated in the busy streets of the city of Milwaukee. Important as the street railway lines are, it goes without saying that their right to the use of public streets is not exclusive. Cars are run on such lines, particularly at certain periods of the day, with great frequency. They make numerous stops and do not attain that high velocity that is required on steam roads, where stops are comparatively infrequent. Street cars are usually run singly, and, necessarily, are run at times with reference to obstructions in their route. Steam roads run comparatively few trains, run them over their own right of way, and only occasionally cross a highway. They often run at great speed, and are usually heavy and cumbersome and cannot be readily brought to a standstill. This question was considered in *Tesch v. Milwaukee E. R. & L. Co., supra,* and while no comparison is made between the two classes of roads, what is there held is not in accord with the cases defin-

ing what is negligence in attempting to cross the tracks of a
steam road.   It is said:

"A person desiring to cross a street-car track in advance
of an approaching car has the right of way if, calculating rea-
sonably from the standpoint of a person of ordinary care and
intelligence so circumstanced, he has sufficient time, proceed-
ing reasonably, to clear the track without interfering with
the movement of the car to and past the point of crossing,
assuming that it is moving at a reasonable and lawful rate
of speed.   If a person, exercising his judgment as indicated,
attempts to cross the track, and it turns out that he has mis-
calculated, he cannot be held guilty of a breach of duty to
exercise ordinary care.   If in the circumstances stated, other
than the speed of the car, the car is approaching at an unlaw-
ful rate of speed, and it is observable by the person about to
cross the track, by the exercise of ordinary care, he must take
that into consideration in determining whether there is time
to safely clear the track; the duty to exercise ordinary care
for his own protection not being excused by the fault of any-
body else."

This rule is manifestly sound if ordinary care is "such care
as persons of ordinary care and prudence observe in their
business," or "such care as the great mass of mankind, or the
majority of mankind, observe in the transactions of human
life," under the same or similar circumstances.   *Dreher v.
Fitchburg,* 22 Wis. 675; *Duthie v. Washburn,* 87 Wis. 231,
233, 58 N. W. 380; *Nass v. Schulz,* 105 Wis. 146, 81 N. W.
133; *Hayes v. C., M. & St. P. R. Co.* 131 Wis. 399, 111 N.
W. 471.   A court cannot say, as a matter of law, that persons
of ordinary care using the streets of the city of Milwaukee do
not observe the distance cars are from the crossings and the
probable rate of speed at which they are proceeding and do
not calculate whether there is sufficient time to cross the tracks
in advance of the car.   If they did not do so, and waited until
all cars were out of sight, they might find it difficult to cross
at all.

The plaintiff had almost cleared the track when his vehicle

was struck.   A few steps further, as we read the testimony, would have placed him out of danger.   If it is true, as one witness testified, that the car proceeded at twice the ordinary rate of speed, and that plaintiff could not determine from his location that the car was running at such an excessive speed, it would seem to be a fair question for the jury to say whether he was guilty of negligence in attempting to make the turn. Considering the facts as shown on this trial, and they are unsatisfactory in many important particulars, we think the court should have permitted the jury to say whether or not the plaintiff was negligent in attempting to turn around in the manner in which he did, the car which injured him being 900 feet distant from him at the time he started to make the turn.

*By the Court.*—Judgment is reversed, and cause remanded for a new trial.